IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NDX ADVISORS, INC., NDX CAPITAL )
MANAGEMENT, LLC, NDX HOLDINGS, INC., )
NDX TRADING, INC., and ST. CROIX )
CAPITAL MANAGEMENT, LLC, )
　)
    Plaintiffs, )
                )   11 C 517
    v. )
                )   Judge George W. Lindberg
ADVISORY FINANCIAL CONSULTANTS, )
INC. and RUTHE P. GOMEZ, )
　)
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

  Before the Court are defendants' motion to transfer venue and motion to dismiss. For the reasons stated below, the motion to transfer is granted and the motion to dismiss is denied in part.

**I. Background**

  Defendant Ruthe Gomez sells mutual funds and was the president and primary owner of defendant Advisory Financial Consultants, Inc. ("AFC"), a broker-dealer. In 2007, defendants brought an arbitration action against TradeRight Corp., Enterprise Trust Co. ("Enterprise"), and Locke Haven, LLC before a Financial Industry Regulatory Authority ("FINRA") arbitration panel in California. In the arbitration proceeding, defendants alleged that in 2006 they sold their client accounts to Locke Haven, for the benefit of TradeRight and Enterprise, under the understanding that Gomez would continue to do business as she had before the transfer and without any change in her existing client relationships. Defendants further alleged that Gomez became registered with TradeRight, and transferred her personal and family accounts to

TradeRight. According to the arbitration claim, as a result of Enterprise's misrepresentations and fraud, Enterprise gained complete control over the accounts of Gomez, her family, and her clients. Defendants also contend that TradeRight failed to pay them $225,000 owed under the transfer agreement, submitted a form to the FINRA that contained false and malicious statements about Gomez, ignored Gomez's requests for an accounting, and failed to pay Gomez trailing commissions from her clients' mutual fund investments.

Defendants' original arbitration statement of claim asserted fifteen claims, including breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, defamation, negligence, conversion, breach of contract, fraud, and conspiracy. Defendants allege that as a result of TradeRight, Enterprise, and Locke Haven's misconduct, Gomez "has suffered loss of clients, loss of income and her reputation and business prospects have substantially declined."

According to the complaint here, Enterprise ceased doing business in March 2008, after it was forced into receivership by the Securities and Exchange Commission. TradeRight also ceased doing business. TradeRight, Enterprise, and Locke Haven are not parties to this action.

In 2010, defendants filed an amended statement of claim in the arbitration proceeding, adding claims against the plaintiffs in this action. In defendants' amended statement of claim in the arbitration, they allege that the plaintiffs here are affiliated entities that are successors in interest to, and alter egos of, TradeRight. In addition to the claims asserted in the original statement of claim, the amended statement of claim asserts that TradeRight fraudulently conveyed assets to plaintiffs.

Plaintiffs filed this action here in early 2011, seeking declaratory and injunctive relief.

2

Plaintiffs allege that they are not alter egos of TradeRight, that they did not breach any legal duty owed any defendant, and that they are not liable for defendants' losses. In their claim for a declaratory judgment, plaintiffs ask the Court to declare the respective rights and obligations of the parties. In their claim for injunctive relief, plaintiffs ask the Court to enjoin defendants from pursuing claims against them in the California arbitration, and from initiating new or additional claims against plaintiffs "other than in a court of competent jurisdiction." Jurisdiction is based on diversity of citizenship: plaintiffs are citizens of Texas and Minnesota, and defendants are both California citizens.

## II. Analysis

### A. Motion to Transfer

#### 1. 28 U.S.C. § 1406(a)

The Court first considers defendants' motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1406(a). If venue is improper in the district in which a case was filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A diversity case such as this one may be brought in a district "where any defendant resides, if all defendants reside in the same State," or a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *See* 28 U.S.C. § 1391(a). In this context, a corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction when the action is commenced. *Id*. § 1391(c).

When a defendant has challenged venue, the plaintiff bears the burden of establishing

3

that venue is proper. *See Repository Techs. v. Sys. Consultants, Inc.*, No. 02 C 8640, 2003 WL 21148340, at *4 (N.D. Ill. May 16, 2003). The Court takes the facts alleged in the complaint as true unless they are controverted by affidavit, and draws all reasonable inferences in plaintiffs' favor. *See Johnson-Ester v. Schwarzenegger*, No. 09 C 5384, 2010 WL 1257787, at *2 (N.D. Ill. Mar. 25, 2010). In this analysis, the Court may examine facts outside the complaint. *See id.*

Since this is not a case in which all defendants reside in Illinois, plaintiffs must show that a substantial part of the events or omissions giving rise to the claim occurred here in order to establish that venue is proper in the Northern District of Illinois. In the complaint, plaintiffs allege that a substantial part of the events giving rise to the controversy between plaintiffs and defendants occurred in this district because "it was in this judicial district, if any, that Enterprise engaged in the conduct alleged to have caused Defendants' investment losses."

In response to this argument, defendants disagree with plaintiffs' characterization of the underlying arbitration action as relating to defendants' "investment losses." Instead, defendants maintain that their claims in the arbitration proceeding fundamentally concern TradeRight's failure to pay Gomez $225,000 owed under the transfer agreement, TradeRight's withholding of sales commissions from Gomez, and defamatory remarks made by TradeRight about Gomez on securities industry forms. According to defendants, there is no nexus between Enterprise's allegedly fraudulent conduct and the underlying arbitration proceeding.

However, defendants' amended statement of claim in the arbitration proceeding asserts that Enterprise fraudulently gained control over accounts of defendant Gomez, her family, and her clients. The amended statement of claim asserts claims against Enterprise, TradeRight, and plaintiffs for breach of fiduciary duty, breach of the implied covenant of good faith and fair

4

dealing, fraud, and conspiracy, based in large part on the allegation that Gomez was fraudulently induced into entrusting funds to Enterprise and granting Enterprise control over her accounts. Although defendants may consider their breach of contract and defamation claims to be their more significant claims in the arbitration proceeding, it appears that Enterprise's conduct is squarely at issue in the arbitration proceeding as well. Moreover, venue may be proper in more than one district, and the fact that a substantial part of the events also may have occurred elsewhere does not prevent venue from being proper here. *See In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008)

Defendants offer nothing to dispute that Enterprise's allegedly fraudulent conduct occurred in the Northern District of Illinois; indeed, defendants' arbitration claim itself states that "[a]lthough Enterprise holds itself out as headquartered in Nevada, all operational activities are in Oakbrook [sic], Illinois." The Court finds that plaintiffs have met their burden of establishing that a substantial part of the events underlying the claims took place here. The motion to transfer pursuant to 28 U.S.C. § 1406(a) is denied.

  **2.  28 U.S.C. § 1404(a)**

In the alternative, defendants urge the Court to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). A district court may transfer a civil action to any other district where the case otherwise might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In evaluating the convenience of the parties and witnesses, courts should consider the plaintiff's choice of forum, the location of the material events, the residence of the parties, the parties' relative abilities to bear the expense of a trial in a particular forum, and the relative ease of access to evidence and

5

witnesses in each forum. *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001). In determining the interests of justice, courts should consider the feasibility of consolidation with related litigation, the speed at which the case will proceed to trial, and the court's familiarity with the applicable state law in a diversity case. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). The movant bears the burden of establishing that the transferee forum is clearly more convenient. *Id.* at 219-20.

Plaintiffs do not dispute that both defendants reside in the Northern District of California. The Court finds that venue is proper in the Northern District of California, and that this case "otherwise might have been brought" there. *See* 28 U.S.C. § 1391(a).

The Court next considers the factors relating to the convenience of the parties and witnesses. Plaintiffs' choice to file their action here ordinarily would weigh heavily against transfer. However, because this is not plaintiffs' home forum, their choice is entitled to less deference than in the ordinary case. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001). It appears that material events in this case took place in both Illinois and California, and therefore that factor is neutral.

The Court turns to the residence and convenience of the parties. Both defendants are located in the Northern District of California, and no party is located in the Northern District of Illinois. Defendant Gomez is 86 years old, and presumably would experience some level of difficulty traveling here. Although the president of plaintiffs NDX Trading, NDX Holdings and NDX Advisors states that plaintiffs cannot afford to try this case in the Northern District of California, he does not explain why it would be financially more feasible for these Texas and Minnesota entities to do so here. The Court concludes that the residence and convenience of the

parties factors weigh heavily in favor of transfer.

According to plaintiffs, TradeRight's books and records are located in the Northern District of Illinois. Defendants state that documents relating to AFC's and Gomez's claims are located in the Northern District of California. Neither side suggests that the evidence in this case would be difficult to transport from one jurisdiction to another, however, and therefore the access of proof factor is neutral. *See Kammin v. Smartpros, Ltd.*, No. 07 C 2665, 2007 WL 3046128, at *2 (N.D. Ill. Oct. 9, 2007).

The Court next examines the convenience of the witnesses. The Court weighs the convenience of non-party witnesses more heavily than the convenience of witnesses within the control of the parties, since party witnesses are presumed to appear voluntarily. *See First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).

In their response to the motion to transfer venue, plaintiffs identify one party witness who lives in Illinois: NDX Trading registered representative Alan Rodriguez, who signed a letter which defendants contend is evidence that NDX Trading was TradeRight's successor. Plaintiffs also identify four non-party witnesses who live in Illinois: TradeRight president Michael Rukujzo, and three other individuals who signed the transfer agreement on behalf of TradeRight and Locke Haven. Rukujzo and one of the agreement signatories state that their present financial and work requirements would not allow them to travel to Northern California to testify at a deposition or trial.

Defendants identify one party witness who lives in California: defendant Gomez. Defendants also identify two witnesses who are former directors of AFC, live in California, and would testify regarding TradeRight's alleged breach of the transfer agreement. According to

7

plaintiffs, these two individuals are shareholders of AFC and are also defendant Gomez's adult children.

In addition, defendants identify 65 non-party witnesses who live in California. Fourteen of these witnesses are former registered representatives of AFC, who would testify regarding the transfer of AFC's customer accounts to TradeRight, and TradeRight's alleged breach of the transfer agreement. The remaining 51 witnesses are former clients of AFC, who would testify regarding the transfer of their accounts from AFC to TradeRight and/or Enterprise, and the subsequent transfer of their accounts to plaintiff NDX Trading; some of these witnesses may also testify as to 2009 correspondence they received from NDX Trading that stated that NDX Trading assumed TradeRight's former account relationships. Defendants do not explain why the testimony of all 14 former registered representatives and 51 former clients is necessary, and it appears that much of this testimony would be cumulative. Even assuming that only a handful of these individuals testify, however, a significant number of witnesses are located in California. The Court finds that the convenience of the witnesses weighs in favor of transfer.

Finally, the Court considers the interest of justice factors. The parties have not identified any litigation with which this case could be consolidated. Nor have the parties identified any complex or unsettled issues of state law such that it would be advantageous for a particular court to try the case. *See First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006) (noting that a court's familiarity with state law is a neutral factor where the law in question is neither complex nor unsettled). Relevant statistics regarding the relative speed at which cases proceed to trial in the Northern District of Illinois and the Northern District of California suggest that this factor favors transfer. *See* Federal Court Management Statistics

(2010), *available at* "http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Sep.pl" (indicating that for the twelve-month period ending September 30, 2010, the median time from filing to trial was 28.2 months in the Northern District of Illinois and 21.5 months in the Northern District of California).

Having carefully balanced the relevant factors, the Court concludes that defendants have established that the Northern District of California is clearly more convenient than the Northern District of Illinois. The motion to transfer this case pursuant to 28 U.S.C. § 1404(a) is granted.

**B.     Motion to Dismiss**

Defendants also move to dismiss plaintiffs' claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim pursuant to Rule 12(b)(6). The motion to dismiss for lack of personal jurisdiction is denied as moot. The motion to dismiss for failure to state a claim remains pending, and is transferred with the case.

**ORDERED:** Defendants' motion to transfer [11] is granted. This action is ordered transferred to the Northern District of California. Defendants' motion to dismiss [12] is denied in part: the motion to dismiss for lack of personal jurisdiction is denied as moot, and the motion to dismiss for failure to state a claim remains pending, and is transferred with the case.

ENTER:

_____
George W. Lindberg
Senior U.S. District Judge

DATED:   June 6, 2011

9